IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DORSEY S. PARKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-31 (MN) |
| | ) |
| MATT WOFFORD, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Dorsey S. Parker, Dover, Delaware, Pro Se Plaintiff.

May 22, 2020
Wilmington, Delaware

**NOREIKA, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Dorsey S. Parker ("Plaintiff"), a former inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 3). He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5, 11). Plaintiff requests counsel. (D.I. 9). The Court proceeds to screen the Complaint (D.I. 3) pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(a).

## II. BACKGROUND

Plaintiff was injured on February 20, 2018, while playing basketball at the JTVCC. (D.I. 3 at 5). Plaintiff alerted a correctional officer of the injury, and Plaintiff was taken to medical. (*Id.*). There, he was seen by Defendants Dr. Adrian Harewood ("Dr. Harewood") and Dr. Lynette Charles ("Dr. Charles"). (*Id.*). A shoulder x-ray was ordered and Plaintiff was given Ibuprofen. (*Id.*). He was seen by both Drs. Harewood and Charles and non-defendant Karla Koop ("Koop") "for months after" for chest and bicep tears, complained that his injuries were "not normal," and expressed concern about his pain and physical limitations. (*Id.*).

Between June and August 2018, Koop requested consults for an MRI and ultrasound. (*Id.* at 6). Plaintiff alleges that Drs. Harewood and Charles repeatedly ignored or denied Koop's requests and, instead, physical therapy was ordered for a shoulder injury. (*Id.*). Plaintiff alleges that he did not suffer from a shoulder injury and did not require physical therapy. (*Id.*). Plaintiff alleges that his pain continued and his injuries became more pronounced, all of which forced him to quit his institutional job and to stop lifting weights and exercising at a moderately competitive level. (*Id.*).

Plaintiff submitted Grievance 413231 on July 20, 2019, requesting diagnoses, treatment, an MRI, and corrective surgery for a torn pectoralis. (*Id*.). Defendants Stacie Collins-Young ("Collins-Young"), Penny Davis-Wipf ("Davis-Wipf"), and Melina A. Lee ("Lee") heard the grievance and denied it on October 24, 2018. (*Id*.). On December 26, 2018, Defendant Bureau Chief Marc Richman ("Richman") upheld Plaintiff's grievance and approved the request for an MRI. (*Id*.). The order for the MRI was placed and the imaging was completed on January 28, 2019. (*Id*.).

Technician notes on the MRI results state, "formal MRI imaging of the anterior chest wall may be helpful in assessing the pectoralis." (*Id*.). Plaintiff alleges that medical refused to submit a request for the MRI anterior chest wall "for months after" no matter how much he complained. (*Id*.).

On February 2, 2019, Plaintiff submitted Grievance 437210 and complained of increased pain, tearing under the skin, an inability to use his right arm, and asked to see an off-site specialist. (*Id*.). On March 27, 2019, Plaintiff received a letter from Defendant Health Services Administrator Matt Wofford ("Wofford") who informed Plaintiff of the MRI results, but he did not tell Plaintiff of the technician's statement that an MRI of the anterior chest wall may be helpful. (*Id.* at 6-7). On April 26, 2019, grievance committee members Defendants Kelly N. Aspinall ("Aspinall"), Jessica L. Johnson ("Johnson"), and Jocelyn B. Burgess ("Burgess") denied Grievance 437210. (*Id*. at 7). Plaintiff alleges the April 26, 2019 grievance committee denied the grievance after reviewing Wofford's letter even though Plaintiff removed his shirt at the hearing and showed the committee members his injuries. (*Id*.). Plaintiff appealed to Richman and, as alleged by Plaintiff, Richman upheld the denial "upon his receipt of [] Wofford's doctored up version of the MRI results and technician's notes." (*Id*.). Plaintiff alleges that Defendant Ephram Jeon ("Jeon") is culpable

2

because he knew of the complaints and injuries yet refused to vote in favor of proper treatment and aid. (*Id.*).

On November 5, 2019, non-defendant pain management specialist Sheri McAffee-Garner ("McAffee-Garner") observed Plaintiff's injuries while she was giving him cortisone injections, and ordered an ultrasound. (*Id.*). Plaintiff was seen by non-defendants Dr. Cassandra Wilson ("Dr. Wilson") and Barbara Denkins ("Denkins") multiple times prior to the ultrasound. (*Id.*). They determined that Plaintiff's pec and bicep showed "obvious deformity" and "extreme abnormalities." (*Id.*).

An ultrasound was performed on December 18, 2019, and it confirmed Plaintiff's injuries and showed a blood clot within the torn bicep. (*Id.*). Denkins requested that Plaintiff undergo a surgical repair of the pec and bicep, and supervisors denied the request on the basis that Plaintiff did not have enough Level 5 time to qualify for emergency surgery. (*Id.*). Plaintiff submitted an emergency grievance to Defendant JTVCC Warden Dana Metzger ("Metzger") for intervention of a potentially fatal condition. (*Id.*). Metzger denied the grievance on the grounds that it was not an emergency. (*Id.*). Plaintiff was prescribed Xarelto and the prescription ran out on January 9, 2020.[1] (*Id.*).

Plaintiff seeks compensatory and punitive damages. (*Id.* at 8). On April 27, 2020, he informed the Court of his release from prison. (D.I. 7). On May 4, 2020, Plaintiff filed a request for counsel. (D.I. 9).

---

[1] Xarelto is prescription medication used to treat blood clots. *See* https://www.xarelto-us.com (last visited May 18, 2020).

3

### III. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 2020 WL 1982194, at *4 (3d Cir. Apr. 27, 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 331 (1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Dooley,* 2020 WL 1982194, at *4 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (2003) and *Neitzke*, 490 U.S. at 327-28).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding Federal Rule of Civil Procedure 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240

4

(3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)).  Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, however, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d at 114.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted).  In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570).  Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility.  *See Johnson v. City of Shelby*, 574 U.S. 10 (2014).  A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted.  *See id.* at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an entitlement to relief.

5

*See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV.     DISCUSSION

### A.     Grievances

Most of Plaintiff's claims are directed at the grievance process.  He has sued Jeon, a grievance investigator; Collins-Young, Davis-Wipf, Lee, Aspinall, Johnson, and Burgess, all grievance committee members; Richman, who reviewed Plaintiff's appeals of grievance rulings; Metzger, who denied Plaintiff's emergency grievance; and Wofford, who did not provide to the grievance committee a technician's advisory note about possible further medical testing.

The filing of prison grievances is a constitutionally protected activity.  *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006).  To the extent that Plaintiff bases his claims upon his dissatisfaction with the grievance procedure, an inadequate investigation or denial of his grievances the claims fail because Plaintiff has no freestanding claim based on the denial of his grievances.  *See Hayes v. Gilmore*, 802 F. App'x 84, 87-88 (3d Cir. 2020) (citing *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) ("Inmates do not have a constitutionally protected right to the prison grievance process.") (citation omitted); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.")).  Hence the actions of the foregoing defendants in providing evidence, investigating the grievances, denying grievances, or ruling on grievance appeals, simply do not give rise to cognizable, independent claims.

Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were denied, not fully investigated, that the process was impeded in some fashion, or that the grievance process is inadequate. Accordingly, the grievance claims will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

**B.     Medical Needs**

Plaintiff alleges that Dr. Harewood and Dr. Charles ignored requests for medical testing and instead ordered physical therapy and also provided inadequate treatment. It is unclear whether Plaintiff also seeks to raise medical needs claims against the defendants involved in the grievance process discussed in Paragraph IV.A.

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). To state a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

Although "[a]cts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" constitute cruel and unusual punishment under the Constitution, *Estelle*, 429 U.S. at 106, mere negligent treatment does not give rise to a constitutional violation, *Spruill*

7

*v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Nor is "mere disagreement as to the proper medical treatment," sufficient to state a plausible constitutional violation. *Id.*; *see also Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.") (quotation marks omitted).

The allegations against Dr. Harewood and Dr. Charles do not rise to the level of constitutional violations. Plaintiff alleges that when he was initially seen by these physicians he was x-rayed and prescribed medication. He also alleges that he was seen by these physicians "for months after." In addition, Plaintiff alleges that Dr. Harewood and Dr. Charles prescribed physical therapy for Plaintiff rather than order an MRI and an ultrasound. Plaintiff also alleges that unnamed medical individuals refused to submit a request for the MRI following its approval. The allegations are that Plaintiff received medical care but did not agree with the course of treatment he was provided. At most, Plaintiff's allegations lie in negligence, which do not state a claim under the Eighth Amendment. The claims against Dr. Harewood and Dr. Charles will be dismissed.

In addition, the Complaint does not state claims against Richman or Metzger. To establish personal liability against a defendant in a § 1983 action, a defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). With regard to Richman and Metzger, prison administrators who ruled on grievances submitted by an inmate cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints

of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d at 236 (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

To the extent Plaintiff seeks to raise medical needs claims against any other Defendant involved in the grievance process, the claims fail for lack of personal involvement. Although deliberate indifference can be shown where prison authorities prevent an inmate from receiving a recommended treatment, *see Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), courts are divided on whether an official's review and denial of a grievance can establish personal involvement sufficient to state a medical needs claim. *See e.g., Mazza v. Austin*, No. 2:14-cv-0874 GEP AC P, 2018 WL 746409, at *9 (E.D. Cal. Feb. 7, 2018) (recommending denial of motion for summary judgment on Plaintiff's claim challenging medical decisions reached by Defendants, both as members of the prison grievance committee, and in their roles directly assessing plaintiff's medical needs when reviewing plaintiff's appeal); *Battle v. Recktenwald*, No. 14 CV 2738 (VB), 2016 WL 698145, at *10 (S.D.N.Y. Feb. 19, 2016) (agreeing that defendant's denial of an administrative grievance or a refusal to override the medical advice of medical personnel is insufficient to establish liability for an Eighth Amendment violation); *Ward v. Kentucky State Reformatory*, No. 3:09CV-P315-H, 2009 WL 2342724, at *5 (W.D. Ky. July 28, 2009) (holding that where the only allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged denial

9

of medical treatment); *Henry v. Wilson*, No. 2:06cv1439, 2008 WL 131164, at *4-5 n.1 (W.D. Pa. Jan. 9, 2008) (noting that plaintiff cannot allege personal involvement by any defendant merely by virtue of his or her involvement in reviewing inmate grievances); *Madison v. Mazzuca*, No. 02 Civ.10299 RWS, 2004 WL 3037730, at *10 (S.D.N.Y. Dec. 30, 2004) (noting that personal involvement is present where a supervisor reviewed a prisoner's grievance with respect to a constitutional violation and decides against taking any corrective action).

There are no allegations that any of the individuals involved in the grievance provided Plaintiff any medical care. It appears that Plaintiff challenges the grievance process because of an adverse outcome and does not challenge the medical decisions reached by the grievance Defendants in their roles in assessing Plaintiff's medical needs when reviewing his grievance. *See Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Nor do the facts describe the personal involvement, if any, of each defendant. As pled, the allegations fail to state claims upon which relief may be granted against the grievance Defendants. Therefore, the claims will be dismissed.

Finally, Plaintiff has named as a defendant Connections CSP, Inc. ("Connections"), the former Delaware Department of Correction health care provider. Plaintiff describes Connections as the employer of Wofford, Jeon, Collins-Young, Davis-Wipf, Lee, Aspinal, Johnson, Burgess, Dr. Harewood, and Dr. Charles. (D.I. 3 at 12).

When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.,* 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that Connections is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [Connections]

10

policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. §1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

The Complaint contains no allegations directed towards Connections. Also as discussed, the Complaint does not allege any constitutional violations. Nor does it speak to any policy or custom that may have caused a constitutional violation. Accordingly, the claim against Connections will be dismissed.

All medical needs claims will be dismissed as frivolous and for failure to state claims pursuant 28 U.S.C. §§1915(e)(2)(B)(i) and (ii) and 1915A(b)(1). Because, however, it is plausible that Plaintiff may be able to articulate a claim against Defendants or name alterative Defendants, he will be given an opportunity to amend the medical needs claims. *See O'Dell v. United States Gov't*, 256 F. App'x 444 (3d Cir. 2007) (leave to amend is proper where the plaintiff's claims do not appear "patently meritless and beyond all hope of redemption").

### C.     Request For Counsel

Plaintiff seeks counsel on the grounds that he is a high school graduate and uneducated in the law, he was only able to file his case with the help of others, he cannot afford an attorney and has been unable to find one to represent him on a contingency fee basis, and the case is complex. (D.I. 9).

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.[2] *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). Representation by counsel, however, may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

Several of the *Tabron* factors militate against granting Plaintiff's requests for counsel at this time. To date, Plaintiff has ably represented himself and presented his claims. As pled, the issues do not appear to be complex. Also, the case is in its early stages and there is no operative pleading, and Plaintiff will be granted leave to file an amended complaint. Accordingly, the Court

---

[2] *See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

12

finds that counsel is not necessary at this time. Therefore, the request will be denied without prejudice to renew. (D.I. 9).

**V.** **CONCLUSION**

For the above reasons, the Court will: (1) deny without prejudice to renew Plaintiff's request for counsel (D.I. 9); and (2) dismiss the Complaint as frivolous and for failure to state a claim upon which relief may be granted pursuant 28 U.S.C. §§1915(e)(2)(B)(i) and (ii) and 1915A(b)(1). Plaintiff will be given leave to file an amended complaint to amend the medical needs claims.

An appropriate Order will be entered.

13